We'll listen to Plotzker v. Kips Bay Anesthesia. Thank you. Thanks. Late in the day for us to be doing this, isn't it? Good afternoon. May it please the Court, my name is Thomas Piotrowski and I'm an attorney for the plaintiff-relator appellant Edward Plotzker. This is an appeal from the decision order of the United States District Court for the Southern District of New York granting defendants motion for a summary judgment of plaintiff's false claims and New York State's false claims, retaliation, wrongful termination claim. The district court held that plaintiff was terminated not because of the statements that he made to the consultants during the mock inspection, that he would report defendants to the state for Medicare fraud, but because of his overall poor performance. The district court committed a reversible error when it did not accept the plaintiff's version of events, failed to view the evidence in the light most favorable to the plaintiff, and it failed to draw all reasonable inferences in plaintiff's favor. Your argument is he raised enough by his own statement to get to a jury. That is correct, Your Honor. During the mock inspection. But there were many more statements of people who were also at these meetings who didn't support what he said. So that it's more people versus one people, but one person. But still, nothing contradicted his statement except all the other people, right? He was entitled. Well, the argument that the plaintiff may improperly rely upon his testimony to defeat summary judgment where his testimony is not contradictory or rife with inconsistencies that it's facially implausible. In this case, Dr. Platzker's testimony is not inconsistency and incomplete, and in fact, it is also supported by the testimony of the lead investigator. Carol Hyatt? Right, right. Although she said she didn't hear the statement. Yeah, she didn't. She said, he never said there's Medicare fraud. Right. Right, but- How's it so? She said, I never heard that. Everybody else said I never heard that. And she went in to see Friedlander and said, you've got a big problem with this anesthesiologist, right? Right, but when we look at the testimony of Ms. Hyatt, her testimony corroborates plaintiff's version events in that she spoke with the anesthesiologist, Dr. Platzker, about the HNPs, which is the history and physicals. It corroborates that history and physicals did not meet the federal guidelines for Medicare. Failure to complete the proper age piece was the Medicare violation. And she also testified that she might have said to Ms. Awell, which is the KIPP's head nurse, you were cited for this in 2008. And she also, she testified that the physician, which is Dr. Platzker, was concerned about the HNPs and that she also spoke with the anesthesiologist about the patient consent forms. And that the consent forms were not done properly. So given Ms. Hyatt's testimony, it's essentially undisputed that she spoke with Dr. Platzker about the HNPs and patient consent forms, both of which were not done properly and violated Medicare billing requirements. It is also undisputed that Dr. Platzker was concerned about those issues. So the only thing that is in dispute is whether Dr. Platzker said, I will report you to the state for this. Further, Ms. Hyatt- That's big, isn't it? That's why he says he was fired. Yes, yes. He made the statements on January 11th during the Mack investigation. I'm sorry, was it? I'm just going to make sure I have it. Boy, sorry, I just want to make sure I have the time right, right? Yes. What did you say? Okay, thank you so much, Tom. Yes, so the Mack investigation was on January 10th. Dr. Platzker made the statements that I will report you to the state on January 10th. On January 11th, there was a summation meeting after the Mack investigation in which participated Dr. Friedlander, who is the medical director. And there was the lead consultant, Ms. Hyatt. And also the chief head nurse for Gibbs Bay. So these were the people who participated in the meeting. The very next day, there was a summation meeting. And it's undisputed that during this meeting, Ms. Hyatt said, you have a major problem with an anesthesiologist. It's reasonable, or it's a reasonable inference that when she made this statement, she identified that HNP issue was one of the main issues that she observed at the facility. She stated- What were the other problems that she saw with Platzker? Beg your pardon? What were the other problems that she told Friedlander about that she had with Platzker? Well, Dr. Platzker was not identified as the person. Well, she couldn't remember his name, but she said there's one person here that I have real problems with. And it wasn't the HNP that she was talking about, right? Well, the point is that when she was talking about HNP, she identified that as a main issue which is necessary to maintain the Medicare funding. Well, she said one of the things you have to make sure about is that the histories are more extensive here and that the consents are appropriate. She said that wasn't a major problem that I've identified. But she said that Platzker had about four or five different problems that she observed. Cleanliness, taking care of medications, joking with patients, being inappropriate with patients. The alarms were turned off during procedures. That's what she talked to Friedlander about him, right? Well, at least that's what she said in her- The whole meeting took about ten minutes, and Dr. Friedlander said that basically, Ms. Hyatt said to him, you have a major problem, and she understood it to be Dr. Platzker. Dr. Friedlander also testified that he did not terminate Dr. Platzker because of the cleanliness or because of the handling of the medication. And the only reason why he terminated Dr. Platzker was because Ms. Hyatt said that he was inappropriate. However, Dr. Friedlander did not ask what Ms. Hyatt meant by it. So this- He said Dr. Platzker acted inappropriately? Inappropriately- Carol Hyatt told him? Yes. And he didn't say in what way? He didn't ask in what way, and she did not explain in what way. It's important to also realize that Dr. Platzker had the probation, and it was three years earlier. So the probation or the problems with any of the patients, there's no temporal proximity. The probation happened- But this was the last straw, wasn't it? Those aren't his words in his deposition? Well, he said it's- I've had it with this guy. We've had a lot of complaints. One of the other urologists will not practice with him, will not do procedures with him. He's been on probation. We've had all these complaints, and now this review person's coming in and telling me about three or four things that she's observed that he's doing wrong that are dangerous. Well, the defendants are saying that this is the last straw. The plaintiff's position is that the plaintiff is being terminated because he said, well, I will report you to the state. So that is the reason he's being terminated, because he said, I will report you to the state. Did he say that to Dr. Friedlander when Friedlander fired him? Well, during the termination meeting, Dr. Friedlander stated to Dr. Platzker, there's been a meeting of the board, and the board is very unhappy with what you said to the consultant. It's a reasonable inference that he was referring to those statements. But wasn't he asked at his deposition whether he said to Friedlander, you're firing me because I'm going to go to Medicare and tell them about this fraud that's occurring here? Could you repeat that? He was asked at his deposition. When Friedlander came in- Who's he? I'm sorry. He is your client. Okay, yes. At his deposition. He was asked, when Friedlander came in to fire you, did you say to him, you're only firing me because you're worried I'm going to go tell Medicare about these problems with the histories and the consents. Did he say that? He did not. He said, I did not say that, right? He did not. He understood the comment from Dr. Platzker that that's what Dr. Friedlander was referring to. They never talked about the statement at the firing meeting. Well, no, they did not. The statements were referred to. Dr. Friedlander said to Dr. Platzker when he was terminating him two days later and the day after the summation meeting, there was a meeting of the board and the board is unhappy with what you said to the inspectors. That's what he said. That's not what Friedlander said. Friedlander said that never occurred. Yes, but we have two people in the room. It's a disputed testimony. But it's up to a jury, not a judge, to decide credibility. That is correct. And in this case, the district court basically discredited Dr. Platzker's testimony. All inferences should be drawn in favor of the non-movement, who is Dr. Platzker in this case. That is the plaintiff's position. Thank you. May it please the court, Thomas Mealiff on behalf of defendant appellees Kips Bay Endoscopy and Kips Bay Anesthesia. Defendants presented substantial probative evidence on summary judgment on what- But in his affidavit, what more do you need? Well, your honor, again, there's, Judge Daniels, correctly, this is distinguishable for some of the cases that plaintiff has cited in which there was an exclusion, as in Yang, of a plaintiff's testimony. He put in his own testimony. Yeah, Judge Daniels considered Dr. Platzker's testimony. He did not exclude Dr. Platzker's testimony. He decided that it wasn't credible? No, your honor. What he did was he looked at it in light of all the other evidence that was presented. The rule on summary judgment, your honor, is not that the plaintiff's testimony on its own enables a plaintiff to get past summary judgment. The court has acknowledged- I don't know why not. We draw all inferences in favor of the non-movement. In this case, it's Dr. Platzker. And he said, this is my story. Why doesn't that get to the jury? This court itself, your honor, has itself acknowledged in both, has acknowledged in, just one moment, your honor, Augusta, and based on the Scott v. Harris in the Supreme Court, that when opposing parties tell different stories, one of which is blatantly contradicted by the record, so that no reasonable jury- There were tape recordings, weren't there? That's in Scott v. Harris, your honor, but the holding of Scott v. Harris was not limited to circumstances where there's a videotape or an audio recording such as- This is two sets of witnesses, or at least one witness and other witnesses. Isn't that a classic case of judging credibility that goes to a jury? No, your honor. Tell me why not. What am I missing? Yes.  But he also considered the other testimony and the other evidence that was provided, if I may. Many of the cases, your honor, cited by plaintiff discuss circumstances where there's a he said, she said dispute in which there are no third party witnesses. What we have here is what's akin to what the court had in Scott v. Harris, it had other evidence. But in Scott v. Harris, it was physical evidence, it was tape recordings. Here we just have other people. We have third party- All of whom, except for Ms. Hyatt, work for Kips Bay. Well, correction, your honor, there were two non-party witnesses. There was Carol Hyatt, who was an independent contractor for the consulting company that was hired by Kips Bay. And then there was Dr. Midgeon, another consultant who was the CEO of HCI. You have two non-party witnesses. We have two third party witnesses. Those witnesses, your honor, stated definitively that the statement and the one statement that Dr. Plotsky relies on did not happen. But more importantly, your honor, in terms of reading into inferences, inferences must be reasonable. And there's something to distinguish between evidence that allows for a reasonable inference and evidence that gives rise to speculation and conjecture. Here, what plaintiff has is incomplete testimony. He does not know what was told to Dr. Friedlander. He does not know what was- It's a temporal proximity. But your honor, in these cases, temporal proximity is not enough. Where here, as we state, there's a legitimate non-discriminatory reason for his termination. Temporal proximity is not enough to show pretext. Moreover, your honor, the temporal proximity here is to the legitimate non-discriminatory reason for Dr. Plotsker's termination. He had a long record of complaints against him, but they only came to a head after he had this meeting with Carol Hyatt and the rest of the crowd. And on this, it's undisputed, your honor, that he had a long, consistent history of complaints from patients, including probation, including matters such as lack of cleanliness and incessant talking. It's also clear in the record that this continued throughout his time at Kips Bay, and he only maintained his time there at the good graces of Dr. Friedlander and against the calls of others within Kips Bay. The record is also clear, your honor, that the issues that Ms. Hyatt identified, while with Dr. Plotsker in that procedure, included lack of cleanliness and incessant talking. The very issues that he had been placed on probation for and had been issues persistent throughout his time at Kips Bay. In terms of reasonable inferences, your honor, that the plaintiff asked this court and the court below to draw, those inferences are not inferences. Those are his attempts to plug the holes in his incomplete testimony. All Dr. Plotsker has testified is that he made that single statement in a single procedure. He then proceeded to tell no one at Kips Bay, including Dr. Friedlander, that he had made that statement. And that is the extent of his testimony. All the other inferences that plaintiff asked to draw are, in fact, just contradictions of the actual probative evidence that defendants submitted on summary judgment. And that evidence includes two non-party witnesses and their deposition testimony, which I may add, your honor, they were subpoenaed by plaintiff in that case, and they testified as third party, not agents of Kips Bay. In addition, your honor, we have the probation memorandum, his long history of complaints, and documentary evidence to support the legitimate non-discriminatory reason that Dr. Plotsker was terminated. Dr. Plotsker's testimony and the inferences he asked to draw are simply contradictions of the probative evidence that defendants presented. Isn't that the kind of issue that goes to a jury? It's the credibility of one set of witnesses versus the credibility of Dr. Plotsker. Isn't that the classic case of a material question of fact? Again, your honor, I do not believe when there's an entire contradiction based upon only the testimony of the plaintiff. That's all that's required. I don't believe that's the case, your honor. In that case, there would just be a run to jury trials, your honor, based upon an affidavit of a plaintiff corroborating his own story. The court on summary judgment is not, part of the job of the court on summary judgment is to assess the evidence. That is not a one-to-one comparison to weighing the evidence or assessing credibility. They must assess the evidence. And the important distinction here, your honor, even if we were to accept, your honor, your position as true, that would only be relevant as to the first element of the claim. There is no evidence, including from Dr. Plotsker, that there's any connection between the termination, his termination, and the statement he made in the room. Except for temporal proximity. And again, your honor- It happened two days later. But again, your honor, temporal proximity is not enough on its own to show pretext when there was a legitimate non-discriminatory reason for the termination. There has to be more. And there is nothing more, your honor, as all the evidence indicates, that he was fired due to his long history of problems that then culminated- Why then? Because they had a non-party consultant come in and say that Dr. Plotsker, in the thousands of procedures that she had seen, was one of the worst physicians she had ever witnessed. Moreover, the criticisms, and among the criticisms of Dr. Plotsker, were the very same issues that he had been placed on probation for, and that had been the reason that others within CISBE had called for his termination. The fact, your honor, the temporal proximity is to the legitimate non-discriminatory reason for his termination, and the evidence demonstrates that. And on the causal connection, again, your honor, there is no evidence that Dr. Plotsker, including, your honor, by the fact that Dr. Plotsker himself admitted that he did not tell Dr. Friedlander that he had claimed that he was going to report Kip Spade to the state. He did say that the board had heard something. Didn't he say that? We just heard it from- That the board heard that there was an issue with him in the procedure. Of course there was, your honor. It was Ms. Hyatt's evaluation of Dr. Plotsker. And again, your honor, that is a fact that is disputed, but also not relevant or a genuine issue of a material fact that would preclude summary judgment, because there is no dispute that the assessment of Ms. Hyatt of Dr. Plotsker in that procedure room was the last straw that caused Dr. Plotsker's termination. My time is running short, and I just want to, again, emphasize that Judge Daniels properly found that not one of the three elements were met by Dr. Plotsker. Hyatt found that there was a problem with the H&Ps, with the history and physicals, right, that didn't relate to Dr. Plotsker, wasn't that true? Yes, she testified that there were issues with the H&Ps and a variety of other issues generally, none of which rose to the level of Medicare fraud as claimed by Dr. Plotsker. She testified that she at no point indicated that there was anything like Medicare fraud going on, which is what Dr. Plotsker claims, and said that absolutely not did Dr. Plotsker claim he was going to report Kips Bay to the state. But once again, your honor, even crediting that testimony, plaintiffs still cannot meet the other two elements of his claim. Most importantly, that Dr. Friedlander even knew about this statement at the time that he solely made the decision to terminate him. Thank you for your time, your honor. First, with respect to the case that the defense is relying on in Augusta, the language in that case come from the case in Scott v. Harris from the US Supreme Court case. In that case, there was a videotape that recorded the whole incident of what happened. And even though the court observed that normally it's the plaintiff's version of events that has to be taken. In that case, there was a videotape, and the version of events was so highly discredited by the record of the videotape that no reasonable jury could believe them. And what Kips Bay is arguing here, that we have a similar case here. That every witness who was at this meeting disagrees that Dr. Plotsker said anything about reporting the institution to Medicare on the basis of fraud. And isn't that cumulative, when you get enough of that? Well, Dr. Plotsker's testimony, it's not only sufficient to support his claim. But if we too believe that Dr. Plotsker said during the consultants, during the Mac inspection, that he's going to report Kips Bay for Medicare fraud. And that Dr. Friedlander told him during the termination meeting that he's firing him because of the comments. That's not only sufficient to support his claim, but also for him to prevail the trial. Dr. Friedlander denies that he said that. But once again, once again, this is the question for the jury, whom we believe we have two people in a room. So going to the hypothetical that I used in my brief, if we have a female paralegal at the law firm who is being sexually harassed by a partner in private. If she files a lawsuit against them, it will be her word versus his. And plainly, summary judgment cannot be granted to the defendant. Now let's say we have a partner in the same setting in a room. But now we have an architect and her assistant in a room. And now the architect and the assistant submit affidavits stating that harassment did not take place. Based on the reasoning of the district court, now the defendant would be entitled to summary judgment, because the paralegal's testimony is self-serving, contradicted, and unsupported, and that clearly cannot be the case. We have just contradictory statements, which require a jury to decide who's right. If you have no more questions, I'll rest on my briefs. Thank you very much. We'll reserve decision.